IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CASTLEPOINT NATIONAL INSURANCE COMPANY F/K/A SUA INSURANCE COMPANY,**<br><br>              **Plaintiff**<br><br>        v.<br><br>**INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA,**<br><br>              **Defendant** | :<br>:<br>:<br>:<br>:  **Civ. No. 1:14-cv-0792**<br>:<br>:<br>:<br>:<br>:<br>:  **Judge Sylvia H. Rambo**<br>: |

## **M E M O R A N D U M**

In this declaratory judgment action between two insurance companies brought pursuant to 28 U.S.C. § 2201, Plaintiff seeks a declaration as to Defendant's duty to provide a defense to certain parties in an underlying personal injury action. Presently before the court are cross-motions for summary judgment as to Defendant's responsibility of coverage. For the following reasons, the court concludes that the relevant insurance policy places Defendant under an obligation to defend four of the parties in the underlying action, but imposes no duty with respect to the defense and indemnification of the remaining two parties at issue. Plaintiff's motion as it relates to Defendant's duty to indemnify the four parties to which it has a duty to defend will be denied without prejudice pending a final judgment in the underlying action.

**I.       Background**

   **A.     Factual Background**

For purposes of the matter *sub judice*, the following facts are undisputed.  Castlepoint National Insurance Company f/k/a SUA Insurance Company ("Castlepoint") and Insurance Company of the State of Pennsylvania ("ISOP") are insurance companies that sell truckers' liability insurance.  Castlepoint issued an insurance policy to East-West Hauling, Inc. ("East-West"), and ISOP issued an insurance policy ("the ISOP policy") to Single Source Transportation, Inc. ("Single Source").

On November 6, 2009, Kasablanca, Inc. ("Kasablanca") leased a 2000 Volvo tractor ("Volvo tractor") to East-West pursuant to an indefinite lease agreement.  The lease agreement provided that East-West, as the lessee, "agree[d] to assume possession of the vehicle . . . for its exclusive use and control," to "provide all identification required by the Federal Highway Administration, the US Department of Transportation and any other government agencies to be affixed to the vehicle," and "to furnish and pay the cost of all public liability, property damage and cargo insurance on the vehicle, while the vehicle is operated in the service of the company."  (Doc. 15-1, p. 28 of 30.)  The lease agreement further provided that Kasablanca, as the lessor, could not "maintain or enter into any contract or exclusive agreement with any other carrier or forwarder for the uses of the [tractor]" while the lease agreement was in force.  (*Id.*)

On March 19, 2010, Single Source received a bill of lading directing it to haul a load on behalf of The Hub Group, Inc. ("HUB") from Ontario, California to Pennsylvania, pursuant to a transportation services contract whereby Single Source,

as a registered carrier, agreed to provide transportation services to HUB on an ongoing basis. Shortly after departure, however, Single Source's tractor experienced some difficulty and the trailer affixed thereto was rerouted to a facility owned by both Single Source and East-West in Montebello, California. Thereafter, Onkar Singh, the owner of both Single Source and East-West, directed Javier Barbecho-Quinche ("Javier"), an employee of East-West, to take the trailer, owned by Mid-East Transportation, Inc. ("Mid-East"), to Pennsylvania using the Volvo tractor leased to East-West.

On March 22, 2010, as the tractor-trailer operated by Javier and his brother, Lenin Barbecho ("Lenin"), approached its destination, a collision occurred on Interstate-80 in Centre County, Pennsylvania, between it and another tractor-trailer operated by Lawrence Rosenthal ("Rosenthal"). At the time of the collision, the tractor operated by Javier and Lenin displayed a U.S. Department of Transportation ("DOT") number owned by E&K Trucking, Inc. ("E&K").[1]

Rosenthal allegedly sustained injuries in the collision and commenced suit in the Centre County Court of Common Pleas on July 29, 2011 (the "underlying action").[2] All of the parties referenced herein are involved in that suit, which is still pending, either as named defendants or as the defendants' insurance carriers.

---

[1]   The underlying complaint does not specify whether the DOT number appeared on the tractor or the trailer. However, Castlepoint represents in its statement of material facts that the number appeared on the tractor (*see* Doc. 15, ¶7), and ISOP admits this fact in its counter-statement of facts (*see* Doc. 25, ¶ 7).

However, based on the representations made by Castlepoint in its motion for summary judgment and supporting brief, the court will assume that the number appeared on the tractor. (See Doc. 15, ¶ 7; Doc. 16, p. 2 of 23)

[2]   The lawsuit is captioned: *Lawrence A. Rosenthal and Judy Rosenthal v. Kasablanca, Inc., et al.*, Court of Common Pleas of Centre County, Pennsylvania, Civil Division No. 2011-3218.

### B. Procedural History

On April 24, 2014, Castlepoint filed a declaratory judgment complaint against ISOP seeking a declaration that ISOP has a duty to defend and indemnify Javier, Lenin, Kasablanca, East-West, Mid-East, and E&K in the underlying action presently defended by Castlepoint. (Doc. 1.) On June 27, 2014, Defendant ISOP filed an answer denying all of the allegations in the complaint. (Doc. 10.) On December 12, 2014, Castlepoint filed a motion for summary judgment with a statement of relevant facts incorporated therein.[3] (Doc. 15.) A supporting brief followed on December 15, 2014. (Doc. 16.) Castlepoint argues that ISOP has a duty to provide a defense to those underlying defendants because (1) the Volvo tractor is a covered "auto" as defined by ISOP's insurance policy; (2) the Volvo tractor was being used by Javier and Lenin at the time of the accident; and (3) Javier, Lenin, Kasablanca, East-West, Mid-East, and E&K ("the underlying defendants") each qualify as an "insured" under the terms of the ISOP insurance policy. (Doc. 15, p. 19 of 38.)

On January 23, 2015, after being granted an extension of time, ISOP timely filed a brief in opposition to Castlepoint's motion for summary judgment (Doc. 23) and a counter statement of material facts (Doc. 25). In addition, ISOP filed a cross-motion for summary judgment (Doc. 22), a statement of material facts (Doc. 26), and a supporting brief incorporated within its brief in opposition (Doc.

---

[3] In contravention to Local Rule 56.1, which requires a motion for summary judgment to be "accompanied by a separate, short and concise statement of material facts, in numbered paragraphs," Castlepoint incorporated its statement of material facts into its motion for summary judgment. (See Doc. 15.) Because Castlepoint's statement of material facts otherwise conforms to the rule, however, the court will disregard Castlepoint's mere technical noncompliance of the rule as the purpose of the rule is fulfilled by Castlepoint's inclusion of material facts in its motion.

23). ISOP avers that, based on the evidence obtained in the underlying action indicating that Single Source may have been hauling the load on behalf of HUB pursuant to the transportation services contract, ISOP has agreed to defend Javier, Lenin, East-West, and Mid-East under a reservation of rights because they may each qualify as an "insured" under its policy with Single Source. (Doc. 26, ¶ 12.) ISOP, however, denies any obligation to defend and indemnify E&K and Kasablanca. (Doc. 23, pp. 4-5 of 18.)

On February 5, 2015, Castlepoint filed a brief in opposition to ISOP's motion for summary judgment with a counter statement of material facts incorporated therein. (Doc. 29.) ISOP filed a reply brief on February 19, 2015. (Doc. 30.) Therefore, the cross-motions have been fully briefed and are ready for consideration.

## II. <u>Legal Standard</u>

### A. <u>Summary Judgment</u>

Summary judgment may only be granted where the moving party shows that there is no genuine dispute as to any material fact and that judgment as a matter of law is warranted. Fed. R. Civ. P. 56(a). Pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against a party who fails to make a showing sufficient to establish an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In evaluating the evidence, the court must interpret the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in that party's favor. *Montville Twp. v. Woodmont Builders LLC*, 436 F.

App'x 87, 89 n.4 (3d Cir. 2011) (citing *Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009)). There is no genuine issue for trial only when the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The standard for addressing cross-motions for summary judgment remains the same as if only one motion was filed. *See Lawrence v. City of Phila.*, 527 F.3d 299, 310 (3d Cir. 2008). When confronted with cross-motions for summary judgment, the "court must rule on each party's motion on an individual and separate basis, determining for each side, whether a judgment may be entered in accordance with the Rule 56 standard." *Schlegel v. Life Ins. Co. of N. Am.*, 269 F. Supp. 2d 612, 615 n.1 (E.D. Pa. 2003) (quoting 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2720 (1998)).

### B. Choice of Law

In cases such as this one where the federal court's jurisdiction lies in diversity, the court will procedurally apply the choice of law principals of the forum state. *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 226 (3d Cir. 2007). The parties rely on New Jersey law in their written submissions to the court, indicating their agreement that New Jersey law governs this matter. The court agrees with the parties' assessment.

Pennsylvania applies a flexible, interest/contacts methodology under the *Restatement (Second) Conflict of Laws,* to contract choice of law questions, "bearing in mind that 'we are concerned with the contract of insurance' and not the underlying tort." *Hammersmith*, 480 F.3d at 232-33. Pennsylvania applies Section 193 of the

*Restatement (Second) of Conflict of Laws* when the insured has a principal place of insured risk, stating "the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy . . . ." *Specialty Surfaces Int. Inc. v. Continental Cas. Co.*, 609 F.3d 223, 233 (3d Cir. 2010). When the insured has no principal place of risk, Pennsylvania courts apply Section 188(2) of the *Restatement (Second) of Conflict of Laws*, to determine which state has greater contacts with the contract at issue. *Id.* The factors include the place of contracting and negotiating, the place of performance, and the place of the subject matter of the contract. *Id.*

Single Source, as the named insured under the ISOP policy, is a New Jersey corporation with a principal place of business located in Cateret, New Jersey. Performance occurred in New Jersey, as New Jersey state taxes, fees, and surcharges were applied to the contract. (*See* Doc. 23-7, p. 3 of 51.) The covered vehicles under the policy were listed as registered in New Jersey (*see id.* at p. 7 of 51), and certain modifications, including uninsured and underinsured motorist coverage, were added to the contract pursuant to New Jersey law (*see id.* at p. 11 of 51). Therefore, as both parties agree, New Jersey law governs the interpretation of the policy issued to Single Source.

### III. <u>Discussion</u>

The questions presented herein regarding ISOP's duty to defend and indemnify the underlying defendants require the court to interpret the ISOP policy under applicable New Jersey law. Under New Jersey law, an insurance policy is a contract that will be enforced as written when its terms are clear in order to give

effect to the intention of the parties. *Flomerfelt v. Cardiello*, 997 A.2d 991, 996 (N.J. 2010). In considering the meaning of an insurance policy, the court should interpret the language "according to its plain and ordinary meaning," *id.* (quoting *Voorhees v. Preferred Mut. Ins. Co.*, 607 A.2d 1255, 1259 (N.J. 1992)), and "avoid writing a better insurance policy than the one purchased," *Pizzullo v. New Jersey Mfrs. Ins. Co.*, 952 A.2d 1077, 1089 (N.J. 2008). However, if the policy contains an ambiguity, it should be interpreted "to comport with the reasonable expectations of the insured, even if a close reading of the written text reveals a contrary meaning." *Id.*

An insurer's duty to defend arises when the complaint states a claim constituting a risk to the insured. *Voorhees*, 607 A.2d at 1259. "[T]he duty to defend is generally determined by comparing the allegations in the complaint with the language of the policy. When the two correspond, the insurer must defend the suit," irrespective of the claim's actual merit. *SL Indus., Inc. v. Am. Motorists Ins. Co.*, 607 A.2d 1266, 1271 (N.J. 1992) (internal citation omitted); *Voorhees*, 607 A.2d at 1259. "In making that comparison, it is the nature of the claim asserted, rather than the specific details of the incident or the litigation's possible outcome, that governs the insurer's obligation." *Flomerfelt*, 997 A.2d at 998.

An insurer's duty to defend, however, is broader than its duty to indemnify. *Polarome Int'l v. Greenwich Ins. Co.*, 961 A.2d 29, 47 (N.J. App. Div. 2008). While the duty to defend "comes into being when the complaint states a claim constituting a risk insured against," the duty to indemnify arises when that potentially covered claim has been proven and falls within the coverage of the insurance policy. *Mem'l Props., LLC v. Zurick Am. Ins. Co.*, 46 A.3d 535, 535 (N.J.

2012) (quoting *Voorhees*, 607 A.2d at 1259). As the New Jersey Supreme Court has explained:

> Th[e] duties [to defend and indemnify] are neither identical nor coextensive, and therefore must be analyzed separately. Although a definitive conclusion that a policy by its terms affords no coverage, and therefore that there is no duty of indemnification, also means that there is no duty to defend, coverage questions may not have clear answers in advance of discovery or trial. As a result, courts are often required to evaluate whether the insurer owes its insured a duty to defend in advance of a conclusive decision about coverage. In those circumstances, the separate principles that govern the duty to defend must be considered and applied.

*Flomerfelt*, 997 A.2d at 997-98.

### A. ISOP's Duty to Indemnify

Turning to the matter *sub judice*, the underlying action is still pending in the Centre County Court of Common Pleas and there remain disputed factual issues therein. As such, there is no present basis to determine that ISOP must indemnify any of the underlying defendants. That duty, if one exists, must await discovery and trial. Accordingly, the court will deny Castlepoint's motion insofar as it seeks a declaration that ISOP must provide indemnification, and will therefore evaluate whether ISOP owes any of the underlying defendants a duty to defend in advance of a conclusive decision about coverage. *See id.*

### B. ISOP's Duty to Defend

Applying the principles governing an insurer's duty to defend, if a claim against any of the underlying defendants could potentially come within the coverage of the ISOP policy, ISOP has a duty to provide a defense to that defendant in the underlying state court proceeding. Thus, as with all disputes regarding an insurer's duty to defend, this matter turns on the particular language of the policy that defines

the coverage. The relevant provisions of the ISOP policy provide as follows:

> Section II – Liability Coverage
>
> A. Coverage
>
> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".
>
> * * *
>
> We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.
>
> 1. Who Is An Insured
>
> The following are "insureds":
>
> a. You for any covered "auto".
>
> b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:
>
> * * *
>
> c. The owner or anyone else from whom you hire or borrow a covered "auto" that is a "trailer" while the "trailer" is connected to another covered "auto" that is a power unit
>
> * * *
>
> d. The owner or anyone else from whom you hire or borrow a covered "auto" that is not a "trailer" while the covered "auto":

>> (1) Is being used exclusively in your business as a "trucker"; and
>>
>> (2) Is being used pursuant to operating rights granted to you by a public authority.
>
> e. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

(Doc. 23-7, pp. 13-14 of 51.)

The central issue presented herein is whether any of the underlying defendants qualify as an "insured" under the ISOP policy such that ISOP owes that defendant a defense. The court will address each defendant in turn.

### 1. **Javier, Lenin, East-West, and Mid-East**

ISOP has agreed to defend Javier, Lenin, East-West, and Mid-East under a reservation of rights because each may qualify as an insured under ISOP's policy. (*See* Doc. 23, p. 8 of 18.) The court will therefore grant Castlepoint's motion for summary judgment without further discussion insofar as it seeks a declaration that ISOP owes a duty to defend those four underlying defendants.

### 2. **Kasablanca**

Whether Kasablanca is likewise entitled to a defense by ISOP hinges on Section II.A.1.d.'s definition of a covered insured as "[t]he owner or anyone else from whom you [Single Source] hire or borrow a covered 'auto.'" (Doc. 23-7, p. 14 of 51.) Emphasizing the provision's use of the word "owner," Castlepoint argues that Kasablanca, as the owner of a covered auto,[4] is entitled to coverage under the policy. Conversely, ISOP emphasizes the provision's use of the modifying clause

---

[4] It is undisputed that the Volvo tractor is a covered auto under the ISOP policy.

"from whom you hire or borrow a covered 'auto'" and urges that Kasablanca is not entitled to coverage because Single Source did not borrow the tractor *from* Kasablanca. Rather, Single Source borrowed the tractor from Kasablanca's lessee, East-West. In response, Castlepoint argues that Single Source borrowed the tractor from its owner, albeit indirectly, as evidenced by Single Source's possession of the tractor at the time of the collision.

Based on the parties' arguments, the court's assessment of whether Kasablanca is entitled to coverage under the ISOP policy is initially dependent upon the court's interpretation of the clause "from whom you hire or borrow a covered 'auto.'"[5] Significant here is the policy's use of the word "from." Read alone, the word "from" does not reveal whether it refers to the proximate source of the auto or whether it could also refer to a distant, original source of the auto. As the D.C. Circuit recently explained:

> Among the dictionary definitions of "from" is "a function word to indicate the source or original or moving force of something: as . . . the place of origin, source, or derivation of a material or immaterial thing." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 913 (1981). Thus, W.B. Yeats may proclaim, "All creation is [from] conflict," and not necessarily mean that creation springs directly from conflict rather than through the intermediate consequences of conflict, while one who states that a man "took a dime [from] his pocket" could only be understood to mean that the dime originated from a specific location on a specific person.

---

[5] Both parties appear to agree that the clause "from whom you hire or borrow a covered 'auto'" modifies both "owner" and "anyone else," and the court agrees. The term "owner" is not defined in the contract. The modifying clause thus serves to define the owner as the owner of a covered auto, and then narrows the scope of coverage to an owner from whom Single Source hires or borrows a covered auto. The modifying clause serves a similar function in regard to "anyone else," defining the term as a party from whom Single Source hires or borrows a covered auto.

*Nat'l Ass'n of Clean Water Agencies v. E.P.A.*, 734 F.3d 1115, 1125 (D.C. Cir. 2013).

As the court read's the ISOP policy, however, this particular provision's use of the word "from" is not susceptible to either sense of the word. In its ordinary meaning, "from whom you borrow" requires a proximate source interpretation. In other words, "from whom you hire or borrow a covered 'auto'" is akin to a man who took a dime from his pocket, and is plainly understood to mean the specific party from whom the insured directly acquired the vehicle.[6] *See Pizzulo*, 952 A.2d at 1089 (stating that the terms in an insurance policy "are to be given their plain, ordinary meaning").

Further supporting this interpretation is the clause's inclusion of the disjunctive "or" within the phrase "owner or anyone else." Although both parties seemingly overlooked the policy's use of "or" here, as a matter of New Jersey law, the court is bound to give effect to the words used in the insurance policy. *See Krosnowski v. Krosnowksi*, 126 A.2d 182, 188 (N.J. 1956) ("Individual clauses and particular words must be considered in connection with the rest of the agreement, and all parts of the writing and every word of it, will, if possible, be given effect.") The plain meaning of the word "or" is well settled. Where it is used, it generally connotes an alternative between two or more things. *See, e.g.*, *Acosta v. City of Mesa*, 718 F.3d 800, 815 (9th Cir. 2013) ("In its ordinary sense, the function of the word 'or' is to make an alternative such as this or that.") (quoting *In re Jesusa V.*, 85 P.3d 2, 24 (Cal. 2004)); *Kaufman v. Allstate N.J. Ins. Co.*, 561 F.3d 144, 158 (3d Cir.

---

[6] The court notes that it has reviewed the insurance policy in its entirety and considered the usage of the clause "from whom you hire or borrow a covered 'auto'" and similar clauses throughout the contract.

2009) (noting difference between the disjunctive "or" and the conjunctive "and" and finding that the insurance provision's use of the word "or" plainly invokes the disjunctive); *Martin v. AmeriPride Servs. Inc.*, Civ. No. 08cv440-MMA, 2011 WL 2313604, *4 (S.D. Cal. June 9, 2011) (providing definition of "or" as "used as a function word to indicate an alternative" and finding that the use of the word "or" in a contract indicates that the subsections are alternatives to one another); *In re G-I Holdings, Inc.*, 369 B.R. 832, 840 (D.N.J. 2007) ("The use of the disjunctive 'or' indicates that the two options are . . . mutually exclusive and may not be combined.") Thus, the disputed provision covers the owner *or* anyone else from whom Single Source hires or borrows a covered auto, in the disjunctive.

        Castlepoint's desired interpretation of the provision, which would have the court find that ISOP must provide a defense to both the owner *and* the party from whom Single Source borrowed the vehicle, *i.e.*, East-West, reads the meaning out of the use of the word "or" between the two terms. Although the word "or" may be construed to mean "and," and vice versa, in order to carry out the evident intent of the parties, no such intent is present here. *Noell v. Am. Design, Inc.*, 764 F.2d 827, 833 (11th Cir. 1985); *see Razin v. A Milestone, LLC*, 67 So.3d 391, 397 n.3 (Fla. Dist. Ct. App. 2011) ("The use of the word *or* generally means that an alternative option is being presented, though it can be the equivalent of the word *and* where it is clear it is being used in the copulative and not the disjunctive sense.") The more logical interpretation is that ISOP will cover only the party from whom its insured borrowed the vehicle, either the owner or another party. Here, the undisputed facts show that Single Source borrowed the tractor from East-West, the lessee to whom Kasablanca gave exclusive use and control of the tractor.

In light of the plain language of the policy and the contextual clarity provided by the provision's use of the word "or," coupled with the absence of any reasonable alternative interpretation of the coverage language, the policy is unambiguous and does not require ISOP to provide a defense to Kasablanca.[7]

### 3. **E&K**

E&K also fails to qualify as an "insured" under the ISOP policy. To qualify as an insured under the policy, E&K must be either: (1) anyone else while using with Single Source's permission a covered auto owned, hired, or borrowed by Single Source; (2) the owner or anyone else from whom Single Source hires or borrows a covered auto that is a trailer; (3) the owner or anyone else from whom Single Source hires or borrows a covered auto that is not a trailer while that covered auto is being used exclusively in Single Source's business as a trucker; or (4) anyone liable for the conduct of an insured. (*See* Doc. 23-7, p. 14 of 51.)

The only allegation linking E&K to the underlying accident is that E&K's Federal DOT number appeared on the tractor. (*See* Doc. 1-2 ¶¶ 42-43.) There is no allegation or extrinsic evidence that E&K was using the tractor with Single Source's permission, that E&K loaned the tractor to Single Source, or that E&K was in any way liable for the conduct of an insured. Accordingly, E&K does

---

[7] Single Source's argument that ISOP owes Kasablanca a duty to defend under Section II.A.1.e. is likewise untenable. That section provides coverage to "[a]nyone liable for the conduct of an 'insured' . . . but only to the extent of that liability." (Doc. 23-7, p. 14 of 51.) Single Source argues that, as evidenced by the underlying complaint, "Javier was allegedly negligent in driving the 2000 Volvo truck, and [Kasablanca,] as a motor carrier, was responsible for Javier's conduct." (Doc. 29, p. 14 of 16.) However, the underlying complaint alleged that Javier was an employee of East-West (*see* Doc. 1-2 ¶ 25), and East-West's employee file supports this allegation (*see generally* Doc. 30-2). As there is neither evidence nor allegation that Kasablanca had any relationship with Javier, Kasablanca is not liable for his conduct, and, therefore, Kasablanca does not qualify as an "insured" under Section II.A.1.e.

not qualify as an insured under the ISOP policy and ISOP is not obligated to provide a defense to E&K.[8]

## IV.     Conclusion

Based on the foregoing, Castlepoint's motion for summary judgment will be granted in part and denied in part. The court concludes that ISOP is responsible to provide a defense to Javier, Lenin, East-West, and Mid-East, and, therefore, Castlepoint's motion will be granted in this regard. A decision as to ISOP's duty to indemnify those four parties, however, will be denied without prejudice pending resolution of the Rosenthal action. On the other hand, the court concludes that ISOP owes no duty to either defend or indemnify Kasablanca and E&K because neither party qualifies as an "insured" under the ISOP policy. The court will therefore deny Castlepoint's motion insofar as it seeks a declaration that ISOP owes a duty to defend and indemnify Kasablanca and E&K. ISOP's cross-motion for summary judgment will be granted.

                                                          s/Sylvia H. Rambo
                                                    United States District Judge

Dated: May 13, 2015.

---

[8] As ISOP has no obligation to defend or indemnify either Kasablanca or E&K, there is no merit to Castlepoint's alternative argument in favor of shared primary coverage under the ISOP policy's "other insurance" provision.